FILED
2023 Jun-05  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **WATER WORKS AND SEWER BOARD OF THE CITY OF GUNTERSVILLE,** | } } } } | |
| **Plaintiff,** | } } | **Case No.: 4:21-cv-1472-ACA** |
| **v.** | } } } | |
| **GLASS STEEL, INC., et al.,** | } } | |
| **Defendants.** | } } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Water Works and Sewer Board of the City of Guntersville contracted with Defendant PF Moon and Company, Inc., to make certain improvements to one of Guntersville's wastewater treatment plants. One of the improvements was the construction of clarifiers that would assist in cleaning wastewater. Clarifiers must have "baffles," panels made of fiberglass that attach to the wall of clarifiers, and so PF Moon purchased baffles to complete the construction of Guntersville's clarifiers from Defendant Glass Steel, Inc.

Several years after PF Moon completed construction of the improvements, the baffles started failing, ultimately requiring replacement. The Board sued PF Moon and Glass Steel, asserting (1) Glass Steel negligently designed or constructed the baffles and PF Moon negligently installed the baffles ("Count One"); (2) Glass Steel

breached a contract by failing to properly design, construct, inspect, or test the baffles and PF Moon breached a contract to properly install the baffles ("Count Two"); (3) Glass Steel breached express or implied warranties that the baffles had superior strength and would not corrode ("Count Three"); and (4) Glass Steel sold defective baffles, under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). (Doc. 1-1 at 7–10). Glass Steel and PF Moon separately moved for summary judgment on all claims brought against them. (Docs. 32, 33).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** Glass Steel's motion for summary judgment. The court **WILL DENY** the motion for summary judgment on the negligence claim asserted against Glass Steel in Count One because the economic loss rule does not bar this claim and there is sufficient evidence for a factfinder to conclude that Glass Steel negligently fabricated the baffles. However, the court **WILL ENTER SUMMARY JUDGMENT** in favor of Glass Steel and against the Board on the remaining claims because (1) the Board's breach of contract and breach of warranties claims against Glass Steel are barred by the statute of limitations and (2) the Board has not presented any evidence of a safer, practical alternative design in support of its AEMLD claim.

The court **WILL GRANT** PF Moon's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of PF Moon and against the Board because (1) there is no evidence that PF Moon negligently installed the baffles

and (2) the Board has not presented any evidence that PF Moon failed to use due care in performing its obligations under the contract between PF Moon and the Board.

## I.   BACKGROUND

In deciding a motion for summary judgment, the court "view[s] all evidence in the light most favorable to the nonmoving party and draw[s] all justifiable inferences in that party's favor." *Thompson v. Alabama*, 65 F.4th 1288, 1297 (11th Cir. 2023) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the Board. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

The Board operates a wastewater treatment plant in Guntersville, Alabama. (Doc. 1-1 at 6 ¶ 4; doc. 4 at 2 ¶ 4; doc. 5 at 2 ¶ 4). In 2014, the Board decided to make certain improvements to the wastewater treatment plant, including building two new wastewater clarifiers. (Doc. 34-2 at 31; doc. 34-5 at 10). Clarifiers are large tanks with a "rake arm" on the bottom. (Doc. 34-2 at 31, 33–34). Wastewater is pumped into the clarifier and any solids in the water settle at the bottom, where the rake arm pushes the sludge into a drain. (*Id.* at 33–34). Baffles, attached to the wall

of the clarifier midway down the tank, help direct floating solids to the bottom of the tank. (Doc. 35-3 at 12; doc. 34-2 at 34). Clean water drains out of an area near the top of the tank and, in the case of Guntersville's wastewater treatment plant, is eventually discharged into the Tennessee River. (Doc. 34-2 at 25, 34).

Krebs Engineering, Inc. designed and oversaw the improvements project. (Doc. 34-5 at 11, 13). In September 2014, the Board entered a contract with PF Moon to serve as the general contractor for the planned improvements. (Doc. 40-10 at 36–48; doc. 40-11 at 1–17; doc. 34-2 at 31; *see* doc. 37 at 2 ¶ 1; doc. 41 at 3). The contract incorporates Krebs' project manual. (Doc. 40-10 at 36; *see* doc. 34-5 at 29). The project manual provided that PF Moon

> shall bear all expenses related to the correction of faulty or defective work . . . . [T]he discovery or appearance of faulty or defective work after the making of said final payment, shall not relieve [PF Moon] of responsibility for defective materials or faulty workmanship. [PF Moon] shall, at [its] own expense, promptly replace all defective materials or equipment and correct all faulty workmanship discovered and/or appearing within one year from date of written acceptance of the work.

(Doc. 35-13 at 244, 290–91). A separate section of the project manual sets out the guaranty: "[PF Moon] shall remedy any defects in the work which shall appear within a period of one year from the date of final acceptance of the work, and shall pay for damages to other work, facilities, persons, or property resulting from such defects." (*Id.* at 293).

As part of the project, PF Moon needed to buy baffles for the new clarifiers. Glass Steel sent a submittal to PF Moon with information about its baffles. (*Id.* at 206–27; *see* doc. 34-5 at 13). Part of the submittal was a brochure describing its baffles as having a "superior corrosion resistance and are stronger than most other fiberglass Stamford baffle systems." (Doc. 35-13 at 207, 221).

With Krebs' approval, PF Moon bought the baffles for the new clarifiers from Glass Steel. (Doc. 35-2 at 4–5; doc. 34-5 at 13). Under the purchase order, Glass Steel agreed to fabricate, assemble, and ship the baffles to PF Moon. (*See* doc. 35-2 at 4; doc. 34-4 at 7). The purchase order included a one-year warranty "from date of final acceptance by the owner." (Doc. 35-2 at 5). The purchase order does not define who the "owner" is, but there is a reasonable inference that it's the Board. (*See generally id.* at 4–5; *see, e.g.*, *id.* at 5 ¶ 24 (referring to PF Moon as a separate entity from "the Owner"); doc. 40-10 at 44 (PF Moon's labor and material payment bond referring to the Board as "the Owner")).

Glass Steel fabricated the baffles in accordance with the purchase order, cutting holes in the baffles that would be used to mount the baffles to the clarifier walls. (Doc. 35-1 at 25, 106). On May 8, 2015, Glass Steel loaded a truck with the baffles and sent them to Guntersville. (Doc. 34-4 at 14). PF Moon installed the baffles in the clarifiers. (Doc. 34-5 at 14).

In May 2017, Krebs sent PF Moon a letter stating that June 1, 2016 was the date of "substantial completion" of the project. (Doc. 35-13 at 243; *see also* doc. 34-5 at 28). As a result, the one-year warranty provided in the PF Moon-Board contract "for all equipment and work except for those items specifically identified as having an extended warranty period" expired on June 1, 2017. (Doc. 35-13 at 243). The baffles were not specifically identified as having an extended warranty period. (*See id.* at 308, 317–20).

On September 29, 2019, some of the baffles broke loose from the wall of one of the clarifier tanks and floated to the top of the wastewater. (Doc. 34-2 at 37). No other part of the clarifier or the plant was damaged by the failure of the baffles. (*Id.* at 24). But to repair and reinstall the baffles, the Board had to completely drain the clarifier, causing an "excursion" from its permit limits for discharging wastewater into the Tennessee River. (*See* doc. 34-2 at 24–25, 37). Violating the permits does not carry a fine or any other punishment. (*Id.* at 43). However, the discharge caused the Tennessee Riverkeeper to threaten the Board with a lawsuit, which led the Board "to incur legal fees and other costs, including the borrowing of money to make $5.5 million upgrades to its system and raising rates to provide services to its customers."[1] (Doc. 40-12 at 2 ¶ 6).

---

[1] PF Moon states in its reply brief that "the $5.5 million remediation plan existed prior to the [original improvements] project, and was actually the impetus for the project." (Doc. 43 at 4). However, PF Moon cites no evidence in support of that assertion. (*See id.*). Glass Steel does not

A year later, more baffles failed in both clarifiers. (Doc. 34-5 at 19; *see* doc. 35-13 at 241). Baffles continued failing into 2021, when the Board hired a contractor to replace the baffles entirely. (Doc. 34-2 at 43; doc. 35-13 at 231). The Board's wastewater superintendent and Krebs' president both observed that the failed baffles were discolored and had bubbles and broken pieces. (Doc. 34-2 at 8; doc. 34-5 at 21).

In addition to these facts, the Board and Glass Steel have each proffered an expert to opine about the failed baffles. The Board's expert is Mark Smith, the president of Krebs. (Doc. 35-13 at 230–32). Mr. Smith testified that he has been designing water and wastewater treatment facilities for 29 years, though he has no specialized education or training in composite materials, material science, fiberglass or fiberglass materials, or the manufacture of fiberglass. (Doc. 34-5 at 7; *see also* doc. 35-13 at 232).

Mr. Smith's report noted that "[v]isible defects (shearing, discoloration, water pockets/blisters) were observed on the surface of the broken panels" but that "existing mounting anchors for the failed baffle sections appeared to be intact, unaffected and firmly/securely attached to the concrete clarifier walls." (Doc. 35-13

---

address the assertion at all. (*See generally* doc. 42). The court therefore considers the Board's incurrence of legal fees and other costs to be undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c)(1) (requiring a party to support its assertions by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact").

at 230). Mr. Smith opined that the baffles failed because of "faulty/defective fiberglass materials," based on the visible defects in numerous panels, failures in two separate clarifiers at different times and over an extended period, the fact that the existing mounting anchors for failed baffle sections appeared to be intact, staff at the plant reported no large debris or unusually high flows of water that could have contributed to the failure, and the opinions of the two other baffle manufacturers "that a raw material or fabricating problem likely caused premature failures." (*Id.* at 231). At his deposition, Mr. Smith agreed that no third-party expert had conducted a material analysis on the failed baffles and that absent such testing, the "true explanation for the failures may remain undetermined." (Doc. 34-5 at 26).

Glass Steel's expert is Dr. Su Su Wang, who has a doctor of science degree in solid mechanics and materials engineering and is now a professor in mechanical engineering and materials science. (Doc. 35-15 at 5). Dr. Wang's initial report noted that "in-detail forensic analysis of the materials is ongoing," but concluded that the baffles "suffered some type of shearing and breaking force, causing [them] to fracture and detach from the clarifier walls." (*Id.* at 4). He opined that this was caused not by "material defects or failure of the [b]affles and their constituent plastic/polymer composite materials and their manufacture by Glass-Steel," but instead the "result of as yet unidentified/unexpected mechanical or physical events." (*Id.* at 4).

By the time Dr. Wang was deposed, he had examined a sample of one of the failed baffles from the wastewater treatment plant. (Doc. 34-6 at 13). He testified that he found bubbles and cracks on the surface of the fiberglass as well as separations between the layers. (*Id.* at 13–14). He opined that the source of the damage was the bolt holes cut in the baffles and used to attach them to the clarifier walls. (*Id.* at 17, 23). According to Dr. Wang, cutting the bolt holes caused microcracks and tightening bolts in them applied additional stress. (*Id.* at 19–20, 23). The corrosive wastewater then entered the baffle through the microcracks and caused "delamination," or separation of the layers making up the baffle—the inner core of fiberglass and the surface layers. (Doc. 34-6 at 10, 17–18, 23). Wastewater within the baffle would also damage the glass fiber and make the fiberglass more brittle. (*Id.* at 21–22). And as time passed, the damage would worsen. (*See id.* at 10, 23). Dr. Wang expressed no opinion about whether PF Moon's way of installing the baffles caused any damage to the baffles. (*Id.* at 22–23).

The Board filed this action against Glass Steel and PF Moon on September 24, 2021. (Doc. 1-1 at 5). PF Moon then removed this action to federal court. (Doc. 1).

## II.    DISCUSSION

Glass Steel and PF Moon each move for summary judgment on all claims brought against them. (Docs. 32, 33). Summary judgment is appropriate if "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc*., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted). The court will address each defendant's motion separately.

1. Glass Steel's Motion for Summary Judgment

The Board asserts four claims against Glass Steel: (1) negligence in the design or construction of the baffles; (2) breach of contract based on Glass Steel's design, construction, inspection, or testing of the baffles; (3) breach of express or implied warranties about the strength and corrosion-resistance of the baffles; and (4) sale of a defective product. (Doc. 1-1 at 7–10). Glass Steel challenges each of these claims. (*See generally* doc. 36).

a. *Count One (Negligence)*

The Board alleges that Glass Steel negligently designed or constructed the baffles. (Doc. 1-1 at 7 ¶ 17). Glass Steel moves for summary judgment on the grounds that (1) Alabama's economic loss rule precludes any tort recovery; (2) the only evidence of faulty or defective fiberglass materials is Mr. Smith's opinion, which is inadmissible because he is not qualified to opine about fiberglass materials

and his opinion is unreliable; and (3) the doctrine of *res ipsa loquitor* does not permit any inference of negligence in this case. (Doc. 36 at 11–21).

Under Alabama law, all tort claims require the plaintiff to prove "duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Ex parte Harold L. Martin Distrib. Co., Inc.*, 769 So. 2d 313, 314 (Ala. 2000) (quotation marks omitted). However, Alabama follows a doctrine called the economic loss rule, which bars tort claims for negligent manufacture of a product where the only damage is to the product itself. *Dairyland Ins. Co. v. Gen. Motors Corp.*, 549 So. 2d 44, 46 (Ala. 1989); *see also Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671, 674 (Ala. 1989). This is because loss from a product's failure, such as "the value of the product, . . . the displeasure of its customers who find that the product does not meet their needs, or . . . increased costs in performing a service. . . . can be insured." *Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002). But the Alabama Supreme Court has refused to apply the economic loss rule to negligence claims brought by a property owner against a subcontractor for damage to property inflicted during a construction project, instead applying a multi-factor analysis to determine whether the subcontractor owed a duty to the owner. *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 184–86 (Ala. 2010).

The Board argues that the economic loss rule does not apply because this case involves commercial construction and, in any event, the failure of the baffles damaged the clarifiers and caused the Board to discharge wastewater into the Tennessee River in violation of its permits and to the detriment of public health. (Doc. 41 at 17–19).

The Board's negligence claim against Glass Steel does not arise in the construction context; the claim is that Glass Steel negligently designed or constructed the baffles. (Doc. 1-1 at 7 ¶ 17). The claim has nothing to do with the installation of the baffles or the construction of the clarifiers. (*See id.*). Accordingly, the economic loss rule would apply to the Board's negligence claim. However, the court agrees with the Board that its discharge of wastewater into the Tennessee River, causing the Tennessee Riverkeeper to threaten suit and the Board "to incur legal fees and other costs" (doc. 40-12 at 2 ¶ 6), is sufficient to remove this negligence claim from the ambit of the economic loss rule.

Glass Steel's next argument is that the Board's only evidence of negligence is Mr. Smith's opinion that the baffles failed because of faulty or defective fiberglass, which is inadmissible. (Doc. 36 at 12–17). Glass Steel does not cite any law whatsoever in its challenge to Mr. Smith's opinion. (*See id.*). Nevertheless, it appears that Glass Steel challenges the admissibility of Mr. Smith's opinion under Federal Rule of Evidence 702, which permits an expert witness to testify "in the

form of an opinion or otherwise" as long as certain requirements are met. The two requirements that Glass Steel appears to challenge are Mr. Smith's qualifications as an expert and the reliability of his opinion. (*See id.*); Fed. R. Evid. 702. The party proffering expert testimony bears the burden of establishing the admissibility of the testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

The court agrees that Mr. Smith is not qualified to testify as an expert about fiberglass materials generally or whether a fault or defect in the fiberglass caused the baffles in this case to fail. Mr. Smith has many years of experience in designing water and wastewater treatment facilities, but he concedes he has no specialized education or training in composite materials, material science, fiberglass or fiberglass materials, or the manufacture of fiberglass. (Doc. 34-5 at 7). As such, the court need not consider the reliability of his opinion to exclude it.

However, that is not the end of the question, because some of Mr. Smith's opinion is based on his own observations of the failed baffles. (*See* doc. 35-13 at 231; *see also* doc. 34-5 at 26). Specifically, he saw bubbling, discoloration, and tears in the failed baffles. (Doc. 35-13 at 231; *see also* doc. 34-5 at 21). And Glass Steel's expert, Dr. Wang, testified that he also found bubbles and cracks in the fiberglass, which he believed were caused by stress created by the bolt holes cut into the baffles. (Doc. 34-6 at 13–14, 17, 19–20, 23). Glass Steel cut those bolt holes in the baffles.

(Doc. 35-1 at 106). Based on this evidence, a factfinder could find that Glass Steel's fabrication of the baffles was negligent.

Glass Steel's final argument is that the doctrine of *res ipsa loquitor* does not provide any inference of negligence in this case. *Res ipsa loquitor* allows an inference of negligence even in the absence of direct evidence where

> (1) the defendant had full management and control of the instrumentality which caused the injury; (2) the circumstances are such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the instrumentality had not been negligent; and (3) the plaintiff's injury resulted from the accident.

*Nettles v. Pettway*, 306 So. 3d 873, 876 (Ala. 2020) (cleaned up). The court agrees that, absent other evidence of negligence, *res ipsa loquitor* would not apply in this case because, at a minimum, Glass Steel lacked "full management and control" of the baffles during the years after it delivered them and before they failed. However, because there is other evidence of negligence, that doctrine is not necessary for the Board's negligence claim against Glass Steel to survive. As a result, the court **WILL DENY** Glass Steel's motion for summary judgment on the negligence claim asserted against it in Count One.

### b. Count Two (Breach of Contract)

The Board contends that Glass Steel breached a contract for the purchase of the baffles because Glass Steel failed to design, construct, inspect, or otherwise test the panels to ensure that they would function properly. (Doc. 1-1 at 8 ¶ 21). Glass

Steel seeks summary judgment on this claim on the grounds that (1) the statute of limitations bars this claim; (2) Glass Steel had no contract with the Board; and (3) even if Glass Steel had contracted with the Board, there is no evidence it failed to perform. (Doc. 36 at 22–25). The court need not address Glass Steel's merits arguments because its statute of limitations argument prevails.

In Alabama, contracts for sale of goods have a four-year statute of limitations. Ala. Code § 7-2-725(1); *see id.* § 7-2-102 (explaining that Alabama Code Title 7, Article 2 "applies to transactions in goods"). "Goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." *Id.* § 7-2-105(1). Under § 7-2-725, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 7-2-725(2). For other contracts, Alabama provides a six-year statute of limitations. Ala. Code § 6-2-34(9).

Glass Steel contends that because the baffles are a good that it sold to PF Moon, Glass Steel's contract with PF Moon was for the sale of goods, so that the four-year statute of limitations applies. (Doc. 36 at 24–25). As a result, it says, the cause of action accrued on May 8, 2015, when it sent the baffles to Guntersville, and the limitations period expired four years later on May 8, 2019. (*Id.*). But the Board

did not file this action until September 2021, more than two years after the expiration of the limitations period. (Doc. 1-1 at 5).

The Board does not dispute that, if § 7-2-725 provides the applicable statute of limitations, its breach of contract claim is time-barred. (*See* doc. 41 at 49). Instead, it contends that the six-year statute of limitations from § 6-2-34 should apply because this is a construction contract. (*See id.*). The Board is incorrect. The contract that required Glass Steel to fabricate and send the baffles was a contract for the sale of goods. (Doc. 35-2 at 4–5). Glass Steel was not a party to the construction contract between the Board and PF Moon and could not have breached that contract. Accordingly, § 7-2-725 provides the statute of limitations, and the Board's breach of contract claim against Glass Steel is time-barred. Accordingly, the court **WILL GRANT** Glass Steel's motion for summary judgment on the breach of contract claim against Glass Steel asserted in Count Two.

### c. Count Three (Breach of Warranties)

In Count Three, the Board contends that Glass Steel "represented and warranted, expressly or by implication, that the panels had superior strength and that there would be no corrosion within the panels." (Doc. 1-1 at 9 ¶ 25). Glass Steel advances in support of its motion several arguments for summary judgment but the court will address only one: that the four-year statute of limitations from § 7-2-725 bars these claims. (Doc. 36 at 30–31).

Breach of warranty claims relating to goods are subject to the same four-year statute of limitations as breach of contracts for the sale of goods. *See* Ala. Code § 7-2-725; *see also Simmons v. Clemco Indus.*, 368 So. 2d 509, 512 (Ala. 1979) ("The statute of limitations for breach of warranty is found in section 7-2-725."); *see also Locke v. Ansell Inc.*, 899 So. 2d 250, 251 (Ala. 2004). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Ala. Code § 7-2-725(2).

As in the breach of contract claim, the Board does not dispute that, if § 7-2-725 provides the statute of limitations, its cause of action accrued on May 8, 2015 and expired on May 8, 2019. (*See* doc. 41 at 49). For the reasons discussed in the previous section, § 7-2-725 does provide the statute of limitations. Accordingly, the Board's breach of warranty claims against Glass Steel are time-barred and the court **WILL GRANT** summary judgment in Glass Steel's favor on Count Three.

### d.  Count Four (AEMLD)

In Count Four, the Board contends that Glass Steel's baffles were defective under the AEMLD. (Doc. 1-1 at 10 ¶ 32). Glass Steel contends that this claim fails because (1) the Board has not presented any evidence of a defect in the baffles; (2) the Board has not proffered a safe, practical, alternative design available to Glass

Steel when it manufactured the baffles; and (3) the economic loss rule also bars this claim. (Doc. 36 at 31–33).

One of the requirements for a claim of product liability under the AEMLD is that the plaintiff must prove "a safer, practical, alternative design was available to the manufacturer at the time it manufactured the allegedly defective product." *Hosford v. BRK Brands, Inc.*, 223 So. 3d 199, 203 (Ala. 2016) (quotation marks omitted). The Board has not presented any evidence or even argument about the existence of a safer, practical, alternative design. (*See generally* doc. 41). Accordingly, the court **WILL GRANT** Glass Steel's motion for summary judgment on Count Four without discussing the other arguments made by Glass Steel.

### 2.  PF Moon's Motion for Summary Judgment

In the complaint, the Board expressly asserted two claims against PF Moon: (1) negligent installation of the baffles (Count One); and (2) breach of the contract to properly install the baffles (Count Two). (Doc. 1-1 at 7–9). In its briefing on the motions for summary judgment, the Board took the position that it also asserted Count Three (breach of warranties) against PF Moon. (Doc. 41 at 46). The court will address that contention in its discussion of Count Two.

### a. Count One (Negligence)

In Count One, the Board asserts that PF Moon negligently installed the baffles. (Doc. 1-1 at 8 ¶ 18). PF Moon contends that the economic loss rule bars this claim. (Doc. 37 at 12–14). As the court addressed above, it does not.

In the last section of its brief, PF Moon attempts to incorporate by reference the arguments made by Glass Moon in its brief. (Doc. 37 at 18–19). As the court explained in its initial order, it does "not consider arguments incorporated by reference to earlier filings." (Doc. 3 at 15). This is in part because the arguments Glass Steel made were in relation to the specific claim asserted against Glass Steel, not the claim asserted against PF Moon. (*See* doc. 36 at 12–19). As a result, those arguments are inapposite to PF Moon.

However, in other parts of its brief, PF Moon argues that there is no evidence of faulty workmanship. (Doc. 37 at 17–18). Because those arguments go to whether PF Moon breached its duty to the Board, the court will consider them in the context of the negligence claim.

The Board argues that it can establish faulty workmanship because Dr. Wang testified that overtightening the bolts could cause microcracks that would eventually cause the fiberglass to fail and PF Moon was responsible for selecting the baffles made by Glass Steel. (Doc. 41 at 47). There is no evidence to support this contention. Dr. Wang's testimony could lead a factfinder to conclude that overtightening bolts

*could* damage fiberglass baffles (doc. 34-6 at 19–20, 23), Dr. Wang expressed no opinion about whether the bolts on these baffles were overtightened. (*See id.*). And there is no other evidence presented in this case indicating that PF Moon failed to follow the specifications for installation of the baffles or failed in any way other way to exercise due care in installing the baffles. As for PF Moon selecting Glass Steel's baffles, the Board's claim against PF Moon is for negligent installation, not negligent selection. (*See* doc. 1-1 at 8 ¶ 18). But even if the selection of the baffles' fabricator were relevant to the negligent installation claim, the Board's engineer expressly approved PF Moon's selection of Glass Steel. (Doc. 34-5 at 13). Accordingly, the court **WILL GRANT** the motion for summary judgment on the negligence claim asserted against PF Moon in Count One.

### b. Count Two (Breach of Contract)

In Count Two, the Board asserts that PF Moon breached the contract to competently install the baffles. (Doc. 1-1 at 8–9 ¶ 22). PF Moon contends that it is entitled to summary judgment because its contract contained a one-year warranty period that expired before the Board filed this action, and even if the one-year warranty period does not bar this claim, it fails on the merits. (Doc. 37 at 14–18). Before addressing the merits of this claim, the court must address a complication in the pleadings.

Count Two expressly asserts a breach of contract claim against PF Moon. (*See* doc. 1-1 at 8–9 ¶¶ 20–23). By contrast, Count Three asserts against Glass Steel a breach of warranties claim. (*Id.* at 9–10 ¶¶ 24–30). PF Moon argues that because Count Three does not name it or describe any warranties made by PF Moon, the Board's complaint does not assert PF Moon breached any warranty. (Doc. 37 at 16–17). Still, PF Moon covered its bases with an alternative argument that the Board cannot prevail on any breach of warranties claim because there is no evidence it failed to use due care in carrying out its work. (*Id.* at 17–18).

Count Three states that Glass Steel warranted that the baffles "had superior strength and that there would be no corrosion within the panels" and that "[t]he warranty was breached by Glass Steel in that the panels proved to be defective and were not designed or manufactured per the agreed upon specifications and/or they otherwise failed." (Doc. 1-1 at 9 ¶¶ 25–26). The complaint then states that "[a]s a proximate of [sic] the breach of said warranties by Defendants, the Plaintiff has suffered substantial financial damages." (*Id.* ¶ 29). The court agrees with PF Moon that these claims do not apply to PF Moon and therefore addressed Count Three's claim only against Glass Steel.

But the fact Count Three does not state a claim against PF Moon does not mean the complaint does not contain a warranty claim against PF Moon. Alabama law considers a claim for breach of a construction contract by way of faulty

workmanship to be the same as a claim for breach of an implied warranty of workmanship. *Turner v. Westhampton Court, LLC*, 903 So. 2d 82, 93 (Ala. 2004) (breach of contract claim against a builder for faulty workmanship "is more accurately classified as one for the breach of the implied warranty of workmanship."). Thus, "[w]hile improper or faulty construction constitutes a technical performance of the contract and may survive a pure breach-of-contract action, an action alleging the breach of an implied warranty, such as the implied warranty of workmanship, can overcome this obstacle." *Id.*; *see also Blackmon v. Powell*, 132 So. 3d 1, 5 (Ala. 2013) (technical fulfillment of contractual obligations does not prevent recovery for any poor workmanship by way of a breach-of-the-implied-warranty-of-workmanship claim . . . ."); *Blackmon*, 132 So. 3d at 5. Accordingly, even though the court is persuaded that the amended complaint does not expressly assert any breach of warranty claims against PF Moon, Alabama law considers a breach of implied warranty of workmanship claim to be inherent in a breach of contract claim like the one made in this case. As a result, the court will address both the breach of contract and the breach of implied warranty of workmanship claim together.

The court begins with the statute of limitations defense. (*See* doc. 37 at 14–16). PF Moon asserts that its contract with the Board provides a one-year warranty period which limits the otherwise applicable six-year statute of limitations set out in

Alabama Code § 6-2-34(9). (Doc. 35-13 at 290–91, 293). But the parties cannot override the six-year statute of limitations by agreement: "Except as may be otherwise provided by the Uniform Commercial Code, any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void." Ala. Code § 6-2-15; *see also Turner*, 903 So. 2d at 91 (holding that a warranty period that was less than the six-year statute of limitations "does not override the 6–year statute of limitations"). As a result, the six-year statute of limitations for either the breach of contract or the breach of warranty claim applies and PF Moon's statute of limitation defense fails.

That brings the court to the merits. PF Moon argues that the Board cannot prevail on a breach of contract (or breach of implied warranty of workmanship) claim because there is no evidence PF Moon failed to exercise due care in installing the baffles. (Doc. 37 at 17–18). As the court discussed in the previous section, the court agrees. Given the lack of evidence about PF Moon using faulty workmanship in installing the baffles, the court **WILL GRANT** the motion for summary judgment on Count Two.

### III.   CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** Glass Steel's motion for summary judgment. The court **WILL DENY** the motion for summary

judgment on the negligence claim asserted in Count One but **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in favor of Glass Steel and against the Board on Counts Two, Three, and Four.

The court **WILL GRANT** PF Moon's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of PF Moon on Counts One and Two.

The negligence claim asserted against Glass Steel in Count One will proceed to trial. The court will enter a separate partial summary judgment.

**DONE** and **ORDERED** this June 5, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE